UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**HENRY REYES**

     **Plaintiff,**

**v.**                     **No.  SA:18-CV-470-JKP**

**JAVIER SALAZAR, personally and
In his official capacity as Sheriff of
Bexar County, Texas and BEXAR
COUNTY, TEXAS**

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Javier Salazar ("Salazar") and Bexar County's Motion for Summary Judgment. *ECF No. 36*. Upon consideration of the motion, responses, replies and summary judgment evidence, the Court concludes Salazar and Bexar County's motion shall be GRANTED. For this reason, the Order of Referral to Magistrate Chestney is hereby withdrawn, this case is DISMISSED, and the Clerk of Court is ORDERED to close this case.

### Factual and Procedural Background

In his Complaint, Henry Reyes ("Reyes") asserts Salazar violated his "right to freedom of association under the First and Fourteenth Amendments of the United States Constitution, for which [he] seeks and is entitled to relief pursuant to 42 U.S.C. §1983." Specifically, Reyes asserts that upon election as Sheriff of Bexar County, Salazar terminated Reyes's employment based upon Reyes's association with[1] and political allegiance to Salazar's predecessor, Sheriff Susan Pamerleau. *ECF No. 1, pars. 29-34.*

---

[1]  Reyes's allegations are limited to violation of his right to association. He does not assert violation of his right to free speech.

Salazar presents undisputed summary judgment evidence which established the following background facts:

Salazar won the election for Bexar County Sheriff in November 2016, defeating incumbent Sheriff Susan Pamerleau. In preparation for taking office in January 2017, Salazar began choosing his leadership team, which consists of ten individuals referred to as the Sheriff's Command Staff. The ten appointed members of the Sheriff's Command Staff are exempt from civil service protection and are at-will employees. To select his Command Staff, Salazar relied upon selected advisors, or his transition team. The transition team invited individuals to apply and attend initial interviews for Command Staff positions, and then recommended candidates to Salazar for personal interviews with him.

Reyes was a member of Sheriff Pamerleau's Command Staff at the time of the election, serving as Deputy Chief-Assistant Jail Administrator. The transition team invited Reyes to apply for a position on Salazar's Command Staff and interviewed him. The transition team did not recommend Reyes to Salazar for a personal interview, and therefore, he was not chosen as a member of Salazar's Command Staff. In late December, the transition team sent a letter to Reyes advising him he would not be retained by Salazar's administration.

After he interviewed for a position on Salazar's Command Staff, but before he received notice he was not selected, on December 23, 2016, Reyes asked Sheriff Pamerleau to place him in a civil service protected position of Detention Lieutenant, a position he held previously from 2009 to 2013. Salazar filed suit in Bexar County and obtained a Temporary Restraining Order to prevent Reyes's placement in the civil service protected position. This TRO expired on December 30, 2016. Salazar took office on January 1, 2017. Reyes's Command-Staff position of Deputy Chief-

Assistant Jail Administrator was eliminated when Salazar took office, and Reyes's employment with Bexar County expired when Sheriff Pamerleau's term ended December 31, 2016.

Reyes filed this suit against Salazar and Bexar County, and these defendants now seek summary judgment on all claims.

## Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[2] "[T]he substantive law will identify which facts are material," and a fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" where there is sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. *Id*. Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter

---

[2]Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see also Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp.*, 477 U.S. at 323. To meet its initial burden, the moving party must either: (1) present evidence that negates the existence of some material element of the nonmoving party's claim; or (2) point out the nonmoving party lacks sufficient evidence to prove an essential element of its claim. *Id.*; *McKee v. CBF Corp.*, 299 F. App'x 426, 428 (5th Cir. 2008). To do so, the moving party must identify the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982).

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims." *Armas v. St. Augustine Old Roman Catholic Church*, No. 3:17-CV-2383-D, 2019 WL 2929616, at *2 (N.D. Tex. July 8, 2019); *see also Austin v. Kroger Texas, L.P.*, 864 F. 3d 326, 335 (5th Cir. 2017).

If the movant carries that initial burden, the burden shifts to the nonmovant to identify specific facts or present competent summary judgment evidence showing the existence of a genuine fact dispute. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *see also* Fed.R.Civ.P. 56(c). Upon the shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In other

4

words, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue [dispute] of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). Furthermore, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see also Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

"Summary judgment should be used 'most sparingly in … First Amendment case[s] … involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities.'" *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (quoting *Porter v. Califano,* 592 F.2d 770, 778 (5th Cir. 1979)). Still, summary judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1071 (5th Cir.1994) (en banc); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001).

## Analysis

### 1. *Official-Capacity Claim Against Salazar*

As an initial matter, the Court considers Reyes's official-capacity claim against Salazar.

A plaintiff may bring a cause of action under 42 U.S.C. Section 1983 (§ 1983) against a public employee[3] in his individual or official capacity, or against a local government entity. *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403 (1997); *Garza v. Escobar*, 386

---

[3]  In this case, the public employee, Salazar, is a public-servant officer.

F. Supp. 3d 794, 804 (S.D. Tex. 2019). An individual-capacity suit seeks to impose liability upon the subject officer as an individual; an official-capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Serv.'s of City of New York,* 436 U.S. 658, 690 n. 55 (1978); *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). Therefore, a § 1983 suit against a person in his official capacity is duplicative of a suit against the government entity, itself, when based upon the same facts and circumstances. *Goodman*, 571 F.3d at 395; *Garza*, 386 F. Supp. 3d at 804. Consequently, in a suit against a public servant officer in their official capacity and the respective government entity based upon the same facts, the appropriate action is to dismiss any claim against the officer in his official capacity. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Garza*, 386 F. Supp. 3d at 804.

Here, Reyes brings suit against Salazar in his official capacity and against Bexar County, the local government entity of which he is an agent. Because Reyes's official-capacity claim against Salazar is duplicative of his claim against Bexar County, the official-capacity claim against Salazar is **DISMISSED WITH PREJUDICE.**

### 2. *Individual-Capacity Claim Against Salazar*

Reyes alleges Salazar terminated his employment in retaliation of Reyes's political loyalty to former Sheriff Pamerleau, or, thereby, lack of political allegiance to Salazar. *ECF No. 1, pars. 9-10, 29-34.*

With some exception, the First Amendment prohibits government officials from dismissing an employee because of the employee's engagement in constitutionally protected political activity. *See Elrod v. Burns*, 427 U.S. 347, 356 (1976); *Branti v. Finkel,* 445 U.S. 507, 515 (1980*); but cf. Civil Service Comm'n v. Letter Carriers,* 413 U.S. 548, 564, (1973). Cases such as this one

involving allegations of dismissal from employment based on political motivations are commonly called "patronage dismissal" or "political patronage" cases. *Correa v. Fischer,* 982 F.2d 931, 932 (5th Cir. 1993)*; Garza,* 386 F. Supp. 3d at 804-05.

**a.  Elements of a Prima Facie Case**

To prove a patronage dismissal claim, a plaintiff must show: (1) he suffered an adverse employment decision; (2) he engaged in protected political conduct; (3) the adverse employment decision was caused by the protected activity. *Jordan v. Ector County,* 516 F.3d 290, 295 (5th Cir. 2008)*; Bonillas v. Harlandale Indep. Sch. Dist.,* 832 F. Supp. 2d 729, 740 (W.D. Tex. 2011). To prove causation in the third element, a plaintiff must establish the exercise of the protected political conduct was a motivating factor in their termination, or, in other words, the termination was politically motivated. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286-87 (1977); *Correa*, 982 F.2d at 933. If satisfied, the burden shifts to the employer to show by a preponderance of the evidence it would have reached the same decision as to the employee's termination even in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287; *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992). The employee can refute that showing by evidence that his employer's ostensible explanation for the discharge is merely pretextual. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287; *Coughlin v. Lee*, 946 F.2d 1152, 1157-58 (5th Cir. 1991).

To analyze the second element, the Fifth Circuit applies the *Elrod-Branti* Doctrine, which provides the First Amendment "forbids government officials to discharge … public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 64, (1990) (citing *Elrod v. Burns*, 427 U.S. at 356 and *Branti v. Finkel*, 445 U.S. at 515); *McBee v.*

*Jim Hogg County,* 730 F.2d 1009 (5th Cir.1984) (en banc). This doctrine extends to patronage dismissal cases in which an employment decision is based upon support of and loyalty to a particular candidate as distinguished from a political party in power. *Jordan*, 516 F.3d at 295-96 & n.17 (5th Cir. 2008) (discussing and collecting Fifth Circuit cases); *Correa,* 982 F.2d at 934-36; *Rivera v. Harris Cty.,* CV H-19-4920, 2020 WL 3871457, at *9 (S.D. Tex. July 9, 2020)..

Recognizing the wide range of factual variations in First Amendment cases, the Fifth Circuit applies a case-by-case balancing test, referred to as *Connick-Pickering* balancing, to determine whether an employee's protected interest in association with a particular candidate outweighs the employer's interest in promoting the efficient delivery of public services. *Jordan*, 516 F.3d at 295-96 & n.17; *Garza*, 386 F. Supp. 3d at 805–06. Where an employee is dismissed solely because of the employee's political affiliation, the employee prevails with "little, if any, weighing," unless the position is one in which political affiliation is a necessary job requirement then, "the government's interests more easily outweigh the employee's (as a private citizen)." *McBee v. Jim Hogg Cty.*, 730 F.2d 1009, 1014-1017; *Garza*, 386 F. Supp. 3d at 805–06. Thus, "[w]here a public employee is demoted for supporting an elected official's political rival, the key factor in the balancing test is whether political allegiance 'is an appropriate requirement for the effective performance of the public office involved.'" *Garza*, 386 F. Supp. 3d at 805–06 (quotation omitted).

The parties' arguments on this motion focus on the preliminary requisite of the second element, whether Reyes engaged in protected conduct and the third element, causation. Before addressing these arguments, the Court must address the parties' argument on the issue whether Reyes was an "at will" employee at the time of his termination, and thereby, whether Salazar was statutorily authorized to terminate his employment. Consideration whether Reyes was an at-will employee is irrelevant to analysis of a patronage dismissal claim because the question whether

Reyes had a vested right in his employment is not pertinent to a First Amendment challenge. Despite the debate whether a person has a "right" to a government employment position and even though the government may deny him this "right" for any number of reasons, there are some reasons upon which the government may not rely in any termination. *Rutan,* 497 U.S. at 72 (quoting *Speiser v. Randall,* 357 U.S. 513, 526 (1958)). In patronage dismissal cases, the government may not dismiss an employee on a basis that infringes his constitutionally protected interests, whether the employee is "at will" or in a "civil service protected position". *Id.*; *Correa,* 982 F.2d at 936. Thus, this Court will not analyze or determine this argued point. *See Rutan,* 497 U.S. at 72.

### b. Whether Reyes Engaged in Constitutionally Protected Activity

Reyes asserts in his Complaint Salazar violated his First and Fourteenth Amendment right to freedom of association by terminating his employment with the Bexar County Sheriff's Department based upon Reyes's association with and political support of Salazar's opponent, incumbent Sheriff Susan Pamerleau. ECF No. 1 pars. 9-10, 30-31.).

Salazar contends he is entitled to summary judgment on this single cause of action because, by Reyes's own admissions, he did not engage in constitutionally protected conduct required to establish the second element of his prima facie case of violation of his right to association. *ECF No. 36, pp. 6-7.*

Reyes responds Salazar admits Reyes supported Sheriff Pamerleau in the campaign and Salazar knew of Reyes's support. *ECF Nos. 40, 41, p.* 17. Reyes contends because Salazar admits he knew of Reyes's support for Pamerleau, and because Reyes's political alignment can be assumed, this Court may circumvent analysis whether Reyes engaged in protected activity. *Id.* at pp. 16-18. Reyes contends "in First Amendment retaliation cases 'the government's reason for' an adverse action 'is what counts;' when an adverse action is taken 'out of a desire to prevent the employee

from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. §1983." *Id.* at pp. 17-18.

In patronage dismissal cases, "the employees' political support of the defendant's political rival raise[s] the concern that the employees' termination was based on the employees' political loyalties." *Jordan*, 516 F.3d at 296. In such cases, political alignment alone may trigger First Amendment protection. *See Rutan,* 497 U.S. at 72; *Branti,* 445 U.S. at 517; *Elrod,* 427 U.S. at 349-50; *Steadman,* 179 F.3d at 367; *Gomez v. City of Eagle Pass*, 91 F. Supp. 2d 1000, 1013-1014 (W.D. Tex. 2000). While this First Amendment protection can extend to an employee's silence and "to many activities that are by their very nature nonverbal," still, in patronage dismissal cases, "there must be some outward manifestation of the allegedly protected First Amendment activity; a defendant's assumptions and bad motives, standing alone, do not create First Amendment liability." *Jordan*, 516 F.3d at 296; *Steadman*, 179 F.3d at 367.

From the Complaint, this Court concludes Reyes bases his patronage dismissal/freedom of association cause of action on allegations that his protected political conduct was: (1) being a presumed supporter of Sheriff Pamerleau because he was a member of her Command Staff; and (2) donating $250 to Sheriff Pamerleau's campaign.

To support his motion for summary judgment based upon the preliminary issue whether Reyes engaged in protected political activity, Salazar relies upon admissions in the Complaint and Reyes's deposition. In the Complaint, Reyes avers he was a "quiet supporter" and his political support amounted to "making a personal donation of $250 to Susan Pamerleau's re-election campaign but not engaging publicly in vocal campaigning or criticism of Defendant Salazar." *ECF No. 1, pars. 9-10, 30-31*. In his deposition, Reyes was asked to describe the ways he supported

Sheriff Pamerleau during the 2016 campaign. Reyes testified he "may have made some contributions to her campaign," but that he "wasn't active in her campaign as far as, you know, block walking, but just contributions." *ECF No. 36-2, Exh. B, Reyes Depo. at 17:25-18:5*. In his deposition Reyes also testified there was an "assumption that all members of the Command Staff are politically aligned with her, with whoever the Sheriff is." *Id*. at pp. 19:20-20:8.

This evidence satisfies Salazar's summary judgment burden to show Reyes did not engage in protected political conduct to support the alleged First Amendment violation. The fact that Reyes was a member of Sheriff Pamerleau's Command Staff is not, in itself, political conduct nor is this fact per se evidence that Reyes was politically aligned with Pamerleau. As Reyes states, political alignment is simply presumed on this basis. While political alignment, alone, could rise to the level of protected political conduct, being a member of Sheriff Pamerleau's Command Staff is not an overt act of protected First Amendment activity or outward manifestation of political alignment to anchor First Amendment protection. See *Jordan*, 516 F.3d at 296-97; *Steadman*, 179 F.3d at 367.

The summary judgment burden then shifts to Reyes to raise a genuine dispute of material fact whether he engaged in political protected conduct. Here Reyes relies heavily on Salazar's statements in the Application for Temporary Restraining Order as "direct evidence" that Salazar knew Reyes "was a supporter" of Sheriff Pamerleau. *ECF No. 40-2, App. Ex. 2., App. for TRO, par. 7*. Reyes also relies on his deposition testimony stating there was an "assumption that all members of the Command Staff are politically aligned with her, with whoever the Sheriff is." *ECF No. 36-2, Exh. B, Reyes Depo. at 19:20-20:8*. Finally, Reyes relies upon his declaration that he publicly supported Pamerleau's candidacy in 2012 and participated in public events where he held a sign showing support for her bid to be sheriff. *ECF No. 40-2, App. Ex. 1, Reyes Decl., par. 9*.

11

Reyes's summary judgment argument and supporting evidence asserting Salazar knew Reyes was "a supporter" of Sheriff Pamerleau and presumably politically aligned with her are not direct evidence pointedly pertinent to analysis whether Reyes engaged in protected political activity. Rather, this is circumstantial evidence utilized to raise a genuine dispute of material fact whether Salazar believed Reyes to be politically aligned with Sheriff Pamerleau. In this way, Reyes could satisfy his summary judgment burden on the prima facie element of "engagement in protected political activity" should this circumstantial evidence raise a genuine dispute of the material fact whether he was politically aligned with Sheriff Pamerleau.

Before analysis of Reyes's arguments and evidence, however, this Court declines to consider the suggestion of Reyes's overt political support of Sheriff Pamerleau in her 2012 campaign. This prior activity is irrelevant and inapplicable to the 2016 campaign at issue in this case. This Court cannot presume Reyes's political conduct and outward manifestation of political support of Pamerleau in her 2012 campaign against a different candidate extended to her 2016 campaign against Salazar. Further, Reyes does not argue nor present evidence to raise a genuine dispute whether Salazar knew he participated in Sheriff Pamerleau's 2012 political campaign.

Reyes bases his patronage dismissal cause of action on the presumption that he was politically aligned with Susan Pamerleau simply because he was a member of her Command Staff and made a $250 donation to her campaign. However, this Court cannot assign First Amendment liability based upon these facts and the presumption of political alignment. First, Reyes does not argue nor present any evidence which would raise a genuine dispute whether his campaign contribution was anything more than discreet (that is, overt) or whether Salazar knew Reyes contributed to Sheriff Pamerleau's campaign. In Reyes's own words, he was a "quiet supporter" and his political alignment was presumed based upon his position on her Command Staff. Further, other than

his own testimony and declaration, Reyes does not present evidence he made a political contribution.

In the absence of an outward manifestation of political support or alignment, Reyes cannot anchor a cause of action for violation of freedom of association based upon the fact that he was a member of Sheriff Pamerleau's Command Staff and made a political donation. *See Jordan*, 516 F.3d at 296. These acts were admittedly discreet and presumptive. Even if Salazar presumed Reyes was a supporter of Pamerleau based upon his employment position, Salazar's assumptions and bad motives, standing alone, do not create First Amendment liability. *See id*. Thus, this Court cannot give credence to Reyes's argument that this evidence raises a genuine dispute of material fact whether Reyes was politically aligned with Sheriff Pamerleau, and thereby, engaged in protected political activity.

Further, even following Reyes's argument that Salazar's statement in his Application for TRO that Reyes as a "supporter" of Sheriff Pamerleau demonstrates his belief and knowledge of political alignment, this does not circumvent the initial requirement that Reyes present some outward manifestation of political affiliation to trigger First Amendment protection. Thus, even adding this piece to the other presented evidence, Reyes still fails to raise a genuine dispute whether he engaged in any outward sign of his political alignment with Sheriff Pamerleau.

This Court cannot allow a §1983 cause for violation of a right to association to proceed past summary judgment on the theory that Salazar's termination of Reyes was an attempt to violate Reyes's First Amendment rights based upon the showing Salazar may have thought Reyes was supportive of Sheriff Pamerleau during the campaign or even if he presumed Reyes to be politically aligned with her. Salazar's assumptions and bad motive alone are insufficient under our case law to establish a First Amendment claim. *See Jordan*, 516 F.3d at 297; *Steadman,* 179 F.3d at 367.

This Court finds this particular evidence more pertinent to analysis whether Salazar terminated Reyes based upon political motive and will discuss it further below.

Here, there is no summary judgment evidence that raises a genuine dispute whether Reyes engaged in constitutionally protected activity or affiliation. The Court finds, by Reyes's own admissions, he cannot establish the required outward, overt manifestation of engagement in political conduct protected by the First Amendment freedom of association, that is, that he was politically aligned with Sheriff Pamerleau. *See Jordan*, 516 F.3d at 297; *Steadman,* 179 F.3d at 367. Consequently, Reyes fails to meet his burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *See Celotex Corp. v. Catrett,* 477 U.S. at 323; *Little,* 37 F.3d at 1071. Based upon this conclusion, the Court does not reach analysis utilizing the *Elrod/Branti* doctrine or balancing of interests.

For these reasons, Salazar's motion for summary judgment on Reyes's individual-capacity claim must be GRANTED as a matter of law.

### c.  Causation: Whether Salazar's Termination of Reyes was Politically Motivated

Advancing under the presumption that Reyes did engage in protected political activity, this Court will continue for the purpose of addressing Reyes's primary summary judgment argument, which is more pertinent to analysis of the next element: whether Salazar's termination of Reyes was politically motivated.

With regard to this argument, Salazar presents evidence consisting of his deposition and declarations of those on his transition team. Salazar's transition team invited certain individuals to apply and attend initial interviews for Command Staff positions, and then recommended the best candidates to Salazar for personal interviews with him. *ECF No. 36-3, Exh. C, Serrato Decl. par. 4; ECF No. 36-4, Exh. D, Vargas Decl. pars. 5, 11; ECF No. 36-1, Exh. A, Salazar Depo. at 11:12-*

*13:14*.). The transition team invited Reyes and did interview him; however, the team did not recommend Reyes for an interview with Salazar. *ECF No. 36-3, Exh. C, Serrato Decl. par. 5; ECF No. 36-4, Exh. D, Vargas Decl. pars. 9, 11; ECF No. 36-1, Exh. A, Salazar Depo. at 31:7-19*. During his interview, the transition team did not question Reyes regarding his political affiliation or his support for either candidate, nor did it consider whether Reyes supported Pamerleau as a factor in their consideration of him. *ECF No. 36-3, Exh. C, Serrato Decl. pars. 6-7; ECF No. 36-4, Exh. D, Vargas Decl. pars. 7-10*. Salazar did not interfere with or influence this interview process of the transition team. *ECF No. 36-3, Exh. C, Serrato Decl. par. 6; ECF No. 36-4, Exh. D, Vargas Decl. par. 7*.

In his deposition, Salazar attests he made his final Command-Staff decisions based on recommendations from his transition team, as well as from his own personal opinions. *ECF No. 36-1, Exh. A, Salazar Depo. at pp. 11:12-13:14*. Salazar testified he relied heavily on the recommendations of his transition team and had personal reasons for not hiring Reyes. *Id*.

To violate the First Amendment, the termination must involve a political motivation. *Correa, 982 F.2d at 933*. This evidence is sufficient to satisfy Salazar's summary judgment burden to show Reyes cannot establish his termination was politically motivated. *Id*.

The burden then shifts to Reyes to present evidence that raises a genuine dispute whether Salazar terminated his employment based upon this presumed political conduct and presumed political support of Sheriff Pamerleau, that is, whether Reyes's termination was politically motivated.

Reyes contends Salazar judicially admitted his termination of Reyes was motivated by Reyes' support for Susan Pamerleau in the verified Application for Temporary Restraining Order filed December 28, 2016. In this Application for TRO, to prevent Sheriff Pamerleau from demoting Reyes to a protected civil service position, Salazar stated: "…the Defendant [Susan Pamerleau]

has been attempting and has created new positions within the Bexar County Sheriff's office, which are unwarranted and are mere attempts to protect her supporters, more in particular, Chiefs Tammy Burr and Henry Reyes, whose employment status after January 1, 2017 is likely to terminate and not protected under Plaintiff's [Salazar's] administration." *ECF No 40-3, par. 7*. Reyes contends this statement "is direct evidence that creates a question of fact as whether the decision to terminate Reyes was improperly motivated by Reyes' support for Pamerleau."

The Application shows only that Salazar believed Reyes to be a "supporter" of Sheriff Pamerleau, but does not constitute direct evidence that Salazar terminated Reyes for this reason, as Reyes contends. Further, the transition team's decision to not recommend Reyes for a Command Staff interview occurred well before Salazar filed this Application for TRO, and, in fact, was the reason Reyes requested the demotion which prompted this lawsuit. Consequently, the fact that an independent transition team had already made the initial Command Staff decision at the time the lawsuit was filed, and Reyes, himself, created the situation prompting the lawsuit discounts Reyes's reliance on this circumstantial evidence.

In any event, as Reyes asserts, from this Application for TRO one could infer Salazar knew Reyes was a "supporter" of Sheriff Pamerleau even before the ensuing lawsuit and Application for TRO. However, what the Application for TRO does not do is raise a genuine dispute whether Salazar's termination of Reyes was politically motivated.

First, the undisputed summary judgment establishes the transition team determined Reyes should not hold a position on Salazar's Command Staff, and therefore, did not recommend him to be interviewed. This evidence shows also the transition team did not consider whether Reyes was politically aligned with Sheriff Pamerleau or whether he supported her or was active in her campaign. *ECF No. 36-3, Exh. C, Serrato Decl. pars. 6-7; ECF No. 36-4, Exh. D, Vargas Decl. pars.*

16

*7-10*. Reyes does not argue, and nothing in the record shows, this decision by the transition team was politically motivated. Consequently, Reyes cannot attribute to Salazar this presumed adverse employment decision made by the transition team pertaining to the Command Staff position. Nor can this Court include this Command-Staff position decision in its analysis of Reyes's alleged First Amendment violation. Thus, the only employment decision made by Salazar was the ultimate decision to not retain Reyes in any position. This Application for TRO does not raise a genuine dispute of material fact whether this specific employment decision was politically motivated.

Following Reyes's argument, this Court must deduce from this Application for TRO that because Salazar used the term "supporter" in reference to Reyes, Salazar believed Reyes to be politically aligned with Pamerleau, that is, a "political supporter", making his termination of Reyes politically motivated. First Amendment liability arises only if Salazar's termination of Reyes was based upon Reyes's political alignment, not just general support. While recognizing an inference of political motive can be drawn from circumstantial evidence, and circumstantial evidence can raise a genuine dispute of material fact, such an inference cannot be drawn in this case. Reyes's circumstantial evidence of improper political motive is unpersuasive, as it at most, shows just support, but fails to infer political support or alignment. This Court cannot find a genuine dispute of material fact based upon a presumption of political loyalty or presumption of political alignment and nothing else in the record supports such an interpretation.

This circumstantial evidence could be interpreted as a showing that Salazar terminated Reyes because Salazar perceived Reyes as "disloyal". However, the issue of "loyalty" is not material or pertinent to analysis at this step because termination of a public employee on the grounds of disloyalty or incompatibility does not violate the employee's First Amendment right. *See Correa*, 982 F.2d at 933-35.

To rise to the level of a First Amendment violation, the employee's termination must be motivated by political concerns. *Id*. Thus, to establish a viable §1983 cause of action, a terminated public employee must be able to provide evidence of a political motive to their termination. *Id*.

Reyes's difficulty in raising a genuine dispute whether his termination was politically motivated stems from the fact that such finding requires far reaching inference and draws from too much circumstance and conjecture. Unlike the typical case in which unconstitutional patronage dismissal is found, these facts provide no display or outright knowledge of adverse political alignment. *See id.* Instead, Reyes argues this Court should presume adverse political loyalty or political support of his opponent based simply on the fact of his long-term employment and a showing of knowledge of "support" (absent of political alignment). Even at the summary judgment stage, this Court cannot find a genuine dispute of material fact based upon these presumptions and assumptions. Because Reyes cannot raise a genuine dispute of material fact on this essential element of his prima facie case, Salazar is entitled to summary judgment. *See Celotex Corp.,* 477 U.S. at 323; *Little,* 37 F.3d at 1071.

### d.  Whether Salazar Would Have Made the Same Decision

Going further, and even presuming Reyes can show Salazar's termination of him was politically motivated, the burden shifts to Salazar to show by a preponderance of the evidence he would have reached the same decision even in the absence of any protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287; *Click,* 970 F.2d at 113. Reyes can then refute that showing by evidence Salazar's explanation is merely pretextual." *Coughlin*, 946 F.2d. at 1157. At the summary judgment stage, Reyes would just need to raise a genuine dispute of pretext.

First, Salazar presents evidence of his deposition in which he testified he knew of previous instances of Reyes's unprofessional conduct that influenced his decision to not retain him in any

capacity. Specifically, Salazar testified he believed Reyes lied to the media about an important fact at a previous time not related to the campaign, and he heard rumors Reyes had improper relations with a subordinate officer. *ECF No. 36-1, Exh A, Salazar depo, pp. 31:9-38:5; 90:6-13*. Salazar testified he terminated Reyes's employment, or declined to retain him, for these personal reasons, not based upon political motive. *Id*.

This evidence presented is sufficient to present a preponderance of the evidence on this issue. "A termination arising from a personal feud or from no cause at all may be baleful, but it is not a patronage dismissal in violation of the First Amendment." *Correa*, 982 F.2d at 933-36. Although Salazar's reliance on these factors may not be justified or based in truth, these personal reasons are still sufficient to satisfy his burden at this stage.

### e.   Whether Salazar's Reasons are Pretext

Because Salazar satisfied his summary judgment burden to show Reyes's termination was based upon non-political reasons, the burden shifts to Reyes to show these reasons are mere pretext. To support this burden, Reyes points to the conflict between the declarations of the transition team and Salazar's Application for TRO. Reyes contends the assertions in declarations by Robert Vargas and James Serrato that they did not consider Reyes's support for Sheriff Pamerleau in their decision not to recommend him for a Command Staff position are contested by Salazar's statement in the TRO that Reyes was "a supporter" of Pamerleau and he would likely be terminated. Reyes contends these conflicting accounts raise a question of fact for the jury on the issue of causation/pretext and whether Reyes would have been terminated absent his protected support for Pamerleau.

Reyes's argument fails because the transition team determined Reyes was not fit to hold a Command Staff position. The only employment decision that can be attributed to Salazar was to

not retain Reyes for any other position. Thus, the two declarations by the transition team cannot conflict with Salazar's because they pertain to two different employment decisions. This Court can only scrutinize the employment decision made by Salazar.  Further, the transition team declarations cannot factor into determination whether Salazar's reasons for not retaining Reyes for any other position was pretextual.

Reyes also contends the same statement in the Application for TRO also raise a genuine dispute whether Salazar's reasons for termination are pretextual. This Court has already reviewed these statements and for the same reasons discussed, this statement does not support a showing of pretext.

For these reasons, Reyes cannot raise a genuine dispute of material fact on the essential causation element of his prima facie case. Consequently, the Court need not reach the further question whether qualified immunity applies. *See Correa*, 982 F.2d 931, 933–36 (5th Cir. 1993)

### 3. *Claim Against Bexar County*

A county may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 690–91. However, a county may be liable for constitutional injury caused by an employee if the county's policies or customs caused the underlying constitutional violation. *Id*. Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391–92 (1989); *Garza v. Escobar*, 386 F. Supp. 3d at 814. "Municipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002). *Garza v. Escobar*, 386 F. Supp. 3d at 814

Under these facts, Reyes's § 1983 claim against Bexar County fails because, first, as stated previously, Reyes cannot show any violation of an underlying First Amendment right based upon political affiliation. Second, Reyes argues Salazar was a policymaker; however, he fails to allege any Bexar County official policy was the moving force of the alleged violation of his alleged First Amendment right, nor does he produce any summary judgment evidence to raise a genuine issue of material fact whether one exists. Absent these elements, Reyes's claim against Bexar County must be **DISMISSED WITH PREJUDICE.**

## CONCLUSION

For the foregoing reasons, Salazar and Bexar County's motion for summary judgment is **GRANTED.** Reyes's suit and all claims asserted herein against Salazar and Bexar County are **DISMISSED WITH PREJUDICE.** The Order of Referral to Magistrate Chestney is hereby withdrawn, and the Clerk of Court is directed to close this case.

It is so ORDERED.
SIGNED this 15th day of July, 2020.


JASON  PULLIAM
UNITED STATES DISTRICT JUDGE